IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SHAUN MARK DUNAWAY,

Plaintiff,

v.

NANCY BERRYHILL, Acting
Commissioner of Social Security,

Defendant.

No. C 16-03961 WHA

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this social security appeal, plaintiff appeals the denial of supplemental security income. Accordingly, plaintiff's motion for summary judgment is **GRANTED IN PART** and defendant's cross-motion for summary judgment is **DENIED**. This appeal is hereby **REMANDED** to the administrative law judge.

## STATEMENT

**1. PROCEDURAL HISTORY.**

On March 20, 2012, plaintiff Shaun Mark Dunaway applied for supplemental security income, alleging he had been unable to work since March 13, 2012, due to mental issues and seizures (AR 122, 178). The Social Security Administration denied his application both initially and upon reconsideration (AR 42, 50). An administrative hearing was timely requested (AR 47).

On June 10, 2014, Dunaway had a hearing before ALJ Richard Laverdure (AR 796–864). The ALJ rendered a decision on November 10, 2014, finding that Dunaway was not disabled (AR 18, 29). Dunaway requested administrative review (AR 14). The Appeals Council denied the request (AR 6–8).

Dunaway filed this action on July 14, 2016, seeking judicial review of the ALJ's November 2014 decision pursuant to 42 U.S.C. 405(g). The parties now make cross-motions for summary judgment (Dkt. Nos. 23, 24).

**2. TESTIMONY AT THE ADMINISTRATIVE HEARING.**

At the hearing, the ALJ heard testimony from Dunaway and Martin Cary, Ph.D., a medical expert, and Jo Ann Yoshioka, a vocational expert.

Dunaway testified that he had last worked in 2009 for Volunteers of America program for three or four months. He discussed how he has suffered from back pain for several years, which was aggravated in June 2013 when he slipped and fell. He noted he was currently on a list to undergo back surgery at Highland Hospital and visits a chiropractor twice a week. He mentioned that his back pain had not improved and he also had pain in his right leg radiating from his hip to his knee. He stated that if he walked for a prolonged period his legs would collapse, causing him to fall. He explained he is mostly inactive because of the pain.

Dunaway also testified as to the reason for his eye patch, which he stated helps his diplopia in his right eye caused when he was struck in the back of the head with a hammer in September 2008.

He then testified that since the age of fifteen he had been in and out of prison and jail. Specifically, he noted his criminal history involved armed robbery, possession of a firearm, assault, and burglary. The longest sentence he served was six years and eight months for ex-felony possession of a firearm. Dunaway also testified that he successfully completed a drug rehabilitation program for about nine months in the early part of 2012. He said he now attends AA and NA meetings on a regular basis (three to four times per week) and has not had a relapse since completing the rehabilitation program. He noted he primarily had used

methamphetamine. Dunaway's parole office indicated that Dunaway has not had a positive narcotic test since June 2012 (AR 23, 800–12).

Psychologist Martin Cary, Ph.D., testified that Dunaway has a long-standing substance abuse problem beginning when he was ten years old. He noted the record indicates diagnoses of post-traumatic stress disorder (PTSD); major depressive disorder; antisocial personality disorder; adjustment disorder; methamphetamine dependence, in full remission; mood disorder; adjustment disorder; and polysubstance dependence, in partial remission. He testified that Dunaway's major condition is antisocial personality disorder given his criminal history. He stated it is unclear whether PTSD is a prominent diagnosis. He further noted that Dunaway's IQ scores have consistently been in the borderline to low average range. Dr. Cary also testified that Dunaway's mental issues are complicated by past head trauma and substance use, especially methamphetamines. Dr. Cary opined that Dunaway can perform simple, repetitive tasks, but may have some issues with interactions with the public. However, he also noted that when Dunaway is clean and sober and on his medication, he is stable with only occasional irritability (AR 23–24; 812–39).

Furthermore, a vocational expert, Jo Ann Yoshioka, testified that a person of Dunaway's age education, and work experience, who possessed the "capacity for light work . . . alternating sitting and standing . . . . [but no use of] ladders, ropes, or scaffolding . . . . or public interaction . . . . [and only occasionally required] limited coworker interaction, could work as a garment bagger, label coder, and weight tester (paper and pulp). With the added condition of extreme limitations (defined as "no useful ability to perform the activity in a regular work setting"), maintain regular attendance, and be punctual; work in coordination or with other without being unduly distracted by them; complete a normal workday and work week without interruptions from psychologically-based symptoms; perform at a consistent pace without an unreasonable number of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them, or exhibiting behavioral extremes; interact appropriately with the general public; and maintain socially

appropriate behavior; however, Yoshioka testified "those would preclude all jobs"
(AR 859–63).

The ALJ's findings, outlined below, are based on the testimony of these three individuals in addition to the evidence in the record.

### 3. MEDICAL EVIDENCE.

The medical evidence was summarized in the ALJ's decision (AR 20–29). This order will also briefly summarize the more than 500 pages of medical records. Dunaway has been treated for a multitude of physical ailments.

As to Dunaway's back pain, he has had several magnetic resonance imaging scans beginning in 2012. The scan of his cervical spine in October 2012 showed no acute osseous abnormality in the cervical spine; vertebral body heights were preserved; mild degenerative changes of the mid to lower cervical spine with mild loss of disc heigh at L4–C5; moderate loss of disc height at C5–C6 and C6–C7; mild central canal stenosis at C6–C7, secondary to degenerative changes with the central canal measuring 11 mm in AP dimension at this level (AR 25, 642–44).

The August 2013 MRI scan — two months after he fell — revealed moderate degenerative changes; grade 1 anterolisthesis L3 on L4, L5, and S1 with suspected underlying L3 and L5 spondyloysis. The ALJ's decision incorrectly states that this MRI occurred in August 2014 (AR 25, 567).

His December 2013 scan showed large marrow signal abnormalities at the L3 and L4 vertebral bodies, extending into the right pedicle of L4; evidence of bilateral spondylolysis with bilateral facet arthrosis and increased synovial fluid at L3–L4; sever right forminal stenosis at L3–L4 due to combination of facet arthrosis and disc height loss; bilateral L5 spondylolysis with minimal grade 1 spondylolisthesis of L5 on S1 (AR 24, 708–11).

The MRI scan from April 2014 showed relatively stable abnormal T2 high signal in the L3 and L4 vertebral bodies extending into the pedicle of L4 as well as disc facet narrowing; normal spinal cord and conus; and diffuse degenerative changes in the facet regions of the lower

lumbar spine causing moderate neuroforamina narrowing at L3–L4, L4–L5, and L5–S1 with stable bilateral pars defects (AR 24, 642–43).

Highland Hospital physicians have diagnosed him with spinal arthritis, sciatic, degenerative disc disease, degenerative joint disease, and possible osteomyeletis. He was initially treated with medication and chiropractic services while awaiting a neurosurgery consultation. He subsequently underwent surgery on September 25, 2014. The post-operative report noted Dunaway had "severe pain in the lumbar region that increases with physical activity when he stands or sits in any specific position for longer than 10–15 minutes." Additional imaging was performed pre-operation that demonstrated lateral spondylolisthesis at L3–L4 with stenosis as well as severe modic changes at the L3–L4 level (AR 763–78, 791–94).

He has suffered multiple head traumas. He was assaulted and struck with a hammer in September 2008. A computerized tomography scan revealed a right temporal bone and mastoid fracture with a small epidural hematoma and no significant mass effect. A physical exam found Dunaway had diplopia on right lateral gaze. He now wears a patch on his right eye (AR 235–324, 638, 671). The records indicate Dunaway has a possible history of seizure disorder, but as of April 2013 he denied any current seizure activity and denied taking medications (AR 362, 634).

The medical records also trace Dunaway's ongoing mental health issues. He has received multiple diagnoses, including antisocial personality disorder, depressive disorder, PTSD, borderline intellectual functioning, cognitive disorder, and amphetamine dependence, in remission. He has undergone extensive treatment at the Trust Clinic and Parole Outpatient Clinic (*see* AR 545–51, 554–68, 645–51, 674–92)

**ANALYSIS**

1. **LEGAL STANDARD.**

A decision denying disability benefits must be upheld if it is supported by substantial evidence and free of legal error. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "more than a scintilla," but "less than a preponderance." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). It means "such relevant evidence as a reasonable

5

mind might accept as adequate to support a conclusion." *Ibid.* The Court must "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion." *Andrews*, 53 F.3d at 1039. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities;" thus, where the evidence is susceptible to more than one rational interpretation, the decision of the ALJ must be upheld. *Ibid.*

The claimant has the burden of proving disability. *Id.* at 1040. Disability claims are evaluated using a five-step inquiry. 20 C.F.R. 404.1520. In the first four steps, the ALJ must determine: (i) whether the claimant is working, (ii) the medical severity and duration of the claimant's impairment, (iii) whether the disability meets any of those listed in Appendix 1, Subpart P, Regulations No. 4, and (iv) whether the claimant is capable of performing his or her previous job; step five involves a determination of whether the claimant is capable of making an adjustment to other work. 20 C.F.R. 404.1520(a)(4)(i)–(v). In step five, "the burden shifts to the Secretary to show that the claimant can engage in other types of substantial gainful work that exists in the national economy." *Andrews*, 53 F.3d at 1040. If the ALJ chooses to use a vocational expert, hypothetical questions asked "must 'set out all of the claimant's impairments.'" *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001)(internal citation omitted).

### 2. THE ALJ'S FIVE-STEP ANALYSIS.

At step one, the ALJ found that Dunaway had not engaged in substantial gainful activity since March 20, 2012, the application date (AR 20).

At step two, the ALJ found Dunaway suffered from several severe impairments, including cervical and lumbar degenerative disc disease, seizure disorder, antisocial personality disorder, depressive disorder, mild PTSD, borderline intellectual functioning versus mild cognitive disorder, and amphetamine dependence, in remission (*ibid.*).

At step three of the analysis, the ALJ found that none of Dunaway's impairments or combination of impairments met or equaled any impairment that would warrant a finding of disability without considering age, education, or work experience (AR 20–22). *See* 20 C.F.R. Pt. 404, Subpart P, App. 1.

6

At step four, the ALJ began his analysis by determining Dunaway's residual functional capacity. After consideration of the entire record, ALJ found Dunaway has the residual functional capacity to perform light work with several limitations. Specifically, the ALJ found Dunaway must be allowed a change of position from sitting to standing every 30 minutes for five minutes. He also found that Dunaway's impairments precluded him from climbing ladders, ropes, or scaffolds. He further found Dunaway could occasionally perform other postural activities, and can perform non-public, simple, repetitive tasks. Finally, he found Dunaway can have occasional coworker interactions (AR 22–28).

At step five, the ALJ found Dunaway had no past relevant work. The ALJ then determined that Dunaway could work in the national economy based on his age, education, work experience, and residual functional capacity. The potential jobs the ALJ determined Dunaway could perform included garment bagger, label coder, and weight tester. The ALJ thus concluded that Dunaway was not disabled (AR 28–29).

### 3. THE ALJ ERRED BY REJECTING THE OPINION OF DR. NGUYEN.

Dunaway contends the ALJ erred in his evaluation of the medical opinions when he discounted the opinion of treating physician Thomas Nguyen, M.D. Our court of appeals has distinguished between three types of physicians: (1) treating, (2) examining, and (3) non-examining. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). When a treating physician's opinion is not contradicted by another physician's opinion, it may be rejected only for "clear and convincing" reasons supported by "substantial evidence" in the record. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). An ALJ errs when "he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014).

Here, the ALJ erred in failing to provide specific and legitimate reasons supported by substantial evidence for rejecting the opinion of treating physician Dr. Thomas Nguyen, who had direct, ongoing contact with Dunaway and found he was capable of less than sedentary

7

work (AR 697–98). Rather, the evidence the ALJ relies on to reject Dr. Nguyen's opinion as inconsistent with the record pre-dates Dunaway's June 2013 fall (*see* AR 576, 589–90, 600, 610, 671). Moreover, the ALJ also does not provide clear and convincing reasons supported by substantial evidence as to why Dr. Nguyen's report noting Dunaway's discontinued use of a cane in February 2014 negates the fact that the same report specifically mentions Dunaway's ongoing, persistent severe back pain (AR 703–04). In sum, the ALJ erred in failing to provide legally sufficient reasons for rejecting the opinions of Dunaway's treating physician.

\*  \*  \*

This error affected the ALJ's analysis in at least steps three and five. At step three, the ALJ found none of Dunaway's impairments (alone or in combination) met or equaled any impairment that would warrant a finding of disability without considering age, education, or work experience. The ALJ erred with respect to step three because he failed to properly consider Dr. Nguyen's opinion.

### 4. DUNAWAY'S OTHER ARGUMENTS.

This order does not consider Dunaway's other arguments (*e.g.*, that the ALJ erred in finding Dunaway's hepatitis C/cirrhosis and diplopia were not severe or that the ALJ erred in discounting the opinions of various treating psychologists) given the foregoing serious error.

### 5. REMAND.

The question remaining is whether to remand for further proceedings or to remand for an award of benefits. The remand decision is based on a three-step "credit-as-true" rule, which requires that (1) the record have been fully developed and further administrative proceedings would not serve a useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Dunaway fails at the third part of this analysis. The ALJ still may find that Dr. Nguyen's opinion is not well-supported or that the evidence in the record as a whole contradicts his opinion.

8

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is **GRANTED IN PART** and defendant's cross-motion for summary judgment is **DENIED**. This action is hereby **REMANDED** to the ALJ for further proceedings.

**IT IS SO ORDERED.**

Dated: August 17, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE